Argued and submitted May 27, 1999, affirmed June 28, 2000

In the Matter of the Compensation of
Billy M. Mohr, Claimant.

Billy M. MOHR,
*Petitioner,*

*v.*

BARRETT BUSINESS SERVICES,
*Respondent.*

(97-04178; CA A103884)

7 P3d 665

Gerald A. Martin argued the cause for petitioner. With him on the brief was Francis & Martin.

William J. Blitz argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

ARMSTRONG, J.

---

* Kistler, J., *vice* Warren, S. J.

## ARMSTRONG, J.

Claimant seeks review of an order of the Workers' Compensation Board in which the Board held that claimant was not entitled to compensation for the medical services that he received after he experienced pain in his arm while at work. He assigns error to the Board's determination that he did not show a sufficient connection between his workplace injury and the medical treatment to entitle him to compensation. We affirm.

Claimant worked as a long-haul trucker for employer. In the course of transcontinental runs, he would sometimes stop at his residence to refresh himself. Before setting off again, he would inspect the truck, checking the oil, coolant, belts, tires, and lights. During one of those inspections, when claimant attempted to open the 400-pound fiberglass hood of the truck to check the oil and water, he experienced extreme pain in his right arm where the biceps is attached to the elbow joint. Claimant went inside his house and attempted to contact his employer. He was unable to do so until the following day. He also did not seek medical attention until the next day, when he saw a physician's assistant.

When employer's agent came to pick up the truck, he noted that claimant's arm had a scoop-like dent in it at the dorsal surface of the elbow. Moreover, the physician's assistant whom claimant visited observed slight ecchymosis on claimant's right arm.[1] Claimant also reported that his right arm had reduced strength and that he felt tingling in the fingers. The physician's assistant diagnosed a sprain and referred claimant for physical therapy. However, when claimant attempted to attend physical therapy, he was turned away because of the poor condition of his arm. Claimant then went to see Dr. Jacobson, who diagnosed an acute rupture of the distal biceps tendon and recommended surgery. When Jacobson performed the surgery, he discovered that the rupture of the tendon was actually quite old and that, because of extensive scarring, it could not be repaired by surgery. He found no evidence of a recent injury to claimant's

---

[1] "[E]cchymosis" is a "[a] purplish patch caused by extravasation of blood into the skin." *Stedman's Medical Dictionary*, 437 (23d ed 1976).

arm and stated that, in his opinion, "[Claimant's] employment activities * * * were not the cause of his need for surgery and treatment * * *."

Claimant sought compensation from employer for the surgery. Employer denied the claim, and the administrative law judge (ALJ) upheld the denial, concluding that claimant had failed to meet his burden to show a sufficient connection between his workplace injury and the medical services that he received. The ALJ also suggested that claimant had not met his burden to show an on-the-job injury in the first instance. The Board adopted the ALJ's order. Claimant assigns error to the Board's determination that he is not entitled to compensation, arguing that the Board's holding is not supported by substantial evidence and that the Board erred in not awarding compensation for the diagnostic medical services that he received

Two statutes bear on the compensability of the medical services provided to claimant. First, ORS 656.005(7)(a) defines "compensable injury" and addresses the compensability of preexisting conditions:

"A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"* * * * *

"(B)   If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

In *SAIF v. Nehl*, 149 Or App 309, 312, 942 P2d 859 (1997), *rev den* 326 Or 389 (1998), we interpreted ORS 656.005(7)(a)(B) to require the factfinder to weigh the "extent of claimant's preexisting condition * * * against the extent of his on-the-job

injury in determining which of the two is the primary cause of his need for treatment of the combined condition." We further clarified that "a claimant needs to establish more than the fact that a work injury *precipitates* a claimant's need for treatment in order to establish the compensability of his combined condition." *Id.* at 313 (citations omitted; emphasis in original).

ORS 656.245 addresses the compensability of medical services. It provides, in part:

"(1)(a)  For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires * * *. In addition, for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury."

Under ORS 656.005(7)(a), a claimant has the burden to show that the claimant suffered an accidental injury at work that required medical services or resulted in disability. Additionally, a claimant who has a preexisting condition must also show that the "compensable injury [was] the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition." ORS 656.005(7)(a)(B). Finally, under ORS 656.245(1)(a), the claimant must show that the medical expenses he seeks to recover were directed to a medical condition "caused in major part" by the compensable injury.

After examining the record, we conclude that the Board's findings that claimant did not meet those burdens are supported by substantial evidence. Jacobson discovered evidence of a preexisting condition during surgery. The evidence is conflicting as to whether claimant's workplace incident or his preexisting condition was the primary cause of his disability and need for treatment. While claimant did allege that he felt extreme pain in his arm during and immediately after the workplace incident, Jacobson, who performed the surgery, could find no evidence of a recent injury to claimant's arm. Moreover, the record does not disclose whether

some of claimant's other symptoms, such as ecchymosis and the dent in his arm, were preexisting or arose only after the workplace incident. Claimant had the burden to show that the workplace incident was the primary cause of his need for the medical services for which he seeks compensation. The Board could have reasonably relied on Jacobson's report in concluding that claimant had not met that burden. As such, its denial is supported by substantial evidence.

Claimant nonetheless argues, based on our decision in *Brooks v. D & R Timber*, 55 Or App 688, 639 P2d 700 (1982), that the aborted surgery to repair the biceps tendon is a compensable diagnostic procedure, notwithstanding the fact that the surgery revealed a noncompensable preexisting condition. Claimant misreads *Brooks*. In *Brooks*, the claimant had sustained an injury when a choker hook struck his left knee. The claimant's doctor suspected that the injury may have caused a tear in the meniscus of the knee. The doctor performed an arthroscopy on the claimant's knee to determine the nature of his injury. Instead of a torn meniscus, the surgery revealed a synovial plica, or a fold in the membrane that lines the knee joint. The claimant's doctor was uncertain as to whether the workplace injury caused the synovial plica but concluded that it was probably idiopathic. After the conclusion of the arthroscopy, the doctor made a separate incision to repair the folded membrane. The ALJ awarded compensation for the entire surgery, but the Board reversed, concluding that, while the claimant had sustained a compensable injury, the surgery was not compensable. We reversed in part, holding that the arthroscopy was compensable, because the claimant had established that the blow to his "knee directly resulted in the need for exploratory surgery," but that the surgery to repair the synovial plica was not. *Brooks*, 55 Or App at 692. *See also Counts v. International Paper Co.*, 146 Or App 768, 770, 934 P2d 526 (1997).

This case differs from *Brooks* in several important respects. First, whether claimant sustained an on-the-job injury is itself subject to reasonable dispute in this case, whereas in *Brooks*, at least at the appellate level, it was undisputed that the claimant had suffered such an injury. *Brooks*, 55 Or App at 691. Moreover, in *Brooks*, the claimant had shown that his injury directly resulted in his need for

exploratory surgery. Because we have upheld the Board's determination that claimant did not establish that his workplace incident was the primary cause of his need for medical services, *Brooks* is of little assistance to claimant. Finally and most importantly, the arthroscopy at issue in *Brooks* was diagnostic in nature. In contrast, in this case, the stated purpose of the surgery was not to diagnose but rather to repair an acute rupture of the tendon. When the doctor performed the surgery, he realized that the rupture was preexisting and could not be repaired. He then proceeded to explore the extent of the preexisting injury. Based on that evidence, it was reasonable for the Board to conclude that the services provided to claimant were not sufficiently related to his workplace incident to entitle him to compensation under *Brooks*.

Affirmed.